**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MILWAUKEE ELECTRIC TOOL CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A TO THE COMPLAINT, <br><br> Defendants. | Civil Action No. 26-cv-2494 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S EX PARTE APPLICATION FOR ENTRY OF AN ORDER TO SHOW CAUSE WITH A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY TRANSFER OF CONTROL OVER SELLER ALIASES, A TEMPORARY ASSET RESTRAINT, AND AN ORDER FOR EXPEDITED DISCOVERY AND SERVICE OF PROCESS BY ELECTRONIC MEANS**

Milwaukee Electric Tool Corporation ("Plaintiff" or "Milwaukee"), submits this Memorandum in support of its *Ex Parte* Motion for Entry of a Temporary Restraining Order ("TRO"), including a temporary injunction, a temporary asset restraint, expedited discovery, service by electronic means, and an order to show cause.

i

**TABLE OF CONTENTS**

I.      Introduction.................................................................................................... 1

II.     Statement Of Facts........................................................................................ 2

    A.   Facts Related to Plaintiff............................................................................ 2

    B.   Defendants' Unlawful Activities ............................................................... 3

III.    Argument ....................................................................................................... 3

    A.   Standard for Temporary Restraining Order ............................................... 5

    B.   Plaintiff Will Likely Succeed on the Merits. ............................................ 5

    C.   There Is No Adequate Remedy at Law, And Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief......................................... 7

    D.   The Balancing of Harms Tips in Plaintiff's Favor, And the Public Interest Is Served by Entry of the Injunction......................................................... 9

IV.     The Equitable Relief Sought Is Appropriate................................................ 10

    A.   An *Ex Parte* Temporary Restraining Order Is Necessary to Combat Unique Circumstances of Offshore Infringement.......................................... 10

    B.   A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized Conduct Is Appropriate. ..................................................... 11

    C.   Preventing The Fraudulent Transfer Of Assets Is Appropriate. ............... 12

    D.   Plaintiff Is Entitled to Expedited Discovery. ........................................... 14

    E.   Service of Process by E-mail and/or Electronic Publication Is Warranted in this Case....................................................................................................... 15

V.      A Bond Should Secure the Injunctive Relief................................................ 16

VI.     Conclusion ................................................................................................... 17

## I.      Introduction

Plaintiff is requesting temporary *ex parte* relief in an action for trademark infringement and counterfeiting under 15 U.S.C.  1114, and false designation of origin under 15 U.S.C.  1125(a) against the defendants identified in the Complaint (collectively, the "Defendants"). As alleged in Plaintiff's Complaint, Defendants are offering for sale and/or selling unauthorized and unlicensed products using counterfeit and infringing versions of Plaintiff's federally registered trademarks (the "Infringing Products") through at least the fully interactive, e-commerce stores operating under the seller aliases identified in the Complaint (the "Seller Aliases").

Defendants run a sophisticated counterfeiting operation and have targeted sales to residents in the United States by setting up and operating e-commerce stores using one or more Seller Aliases through which residents in the United States can purchase Infringing Products. Many of the e-commerce stores operating under the Seller Aliases share unique identifiers, indicating that their counterfeiting operations arise out of the same transaction, occurrence, or series of transactions or occurrences and establishing a logical relationship between them. However, Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope of their operations.

The e-commerce platforms used by Defendants, including PayPal and Shop Pay, have verification systems that Defendants have circumvented by providing false or inaccurate identification information when registering their e-commerce stores. Despite the platforms' efforts, Defendants continue to list counterfeit products through these channels.

Thus, Plaintiff is forced to file this action to discover the full scope of the infringement and attempt to stop Defendants' counterfeiting of Plaintiff's registered trademarks, as well as to protect unknowing consumers from purchasing Infringing Products on U.S.-facing e-commerce platforms.

Defendants' ongoing unlawful activities should be restrained, and Plaintiff respectfully requests that this Court issue an *ex parte* Temporary Restraining Order.

## II.    Statement Of Facts

### A.    Facts Related to Plaintiff

Milwaukee Tool is in the business of developing, marketing, selling and distributing consumer- and professional-grade power tools. For over 90 years, Milwaukee Tool has led the industry in developing innovative solutions that deliver increased productivity and unmatched durability for professional construction and home users. Declaration of Jay Harvey Paragoso (the "Paragoso Decl.") at ¶ 3.

Milwaukee Tool has long engaged in the business of manufacturing and marketing in interstate commerce tools sold under the MILWAUKEE trademarks. MILWAUKEE is a federally registered trademark of Milwaukee Tool: U.S. Trademark Registration Nos. 917,618; 1,489,877; 1,739,475; 2,624,843; 3,772,366; 3,908,609; 4,203,253; 4,203,255; 4,203,258; 4,203,259; 4,207,146; 4,400,601; 4,400,602; 4,407,484; 4,534,864; 4,580,441; 4,861,744; 4,849,244; 5,071,525; 5,085,184; 5,085,201; 5,085,219; 5,085,220; 5,085,222; 5,085,223; 5,085,240; 5,117,238; 5,117,290; 5,203,577; 5,203,630; 5,318,403; 5,883,416; 5,894,915; 6,011,155; 6,089,843; 6,089,844; 6,089,845; 6,175,446; 6,209,035; 6,209,036; 6,259,202; 6,269,364; 6,369,616; 6,694,516; 6,705,395; 7,619,998; 7,620,164; 7,620,165; 7,620,166; 7,650,845; and 7,676,072 (the "MILWAUKEE Trademarks"). Paragoso Decl. ¶4, Exhibit 1 to Complaint. Milwaukee Tool or its predecessors have exclusively used these MILWAUKEE Trademarks, and tools sold under the MILWAUKEE Trademarks are among the most popular ever sold, with hundreds of millions of units sold. Paragoso Decl. ¶5.

**B.    Defendants' Unlawful Activities**

The success of the MILWAUKEE brand has resulted in significant counterfeiting. Paragoso Decl. ¶10.  Consequently, Plaintiff has implemented an anti-counterfeiting program and is investigating suspicious websites and online marketplace listings identified through external vendors in proactive Internet sweeps. Paragoso Decl. ¶10.

Plaintiff has identified numerous online marketplace accounts linked to fully interactive websites and marketplace listings on platforms, including the fully interactive commercial Internet stores operating under the Defendants' online marketplace accounts identified in Schedule A which is attached to the Complaint (collectively, the "Seller Aliases"), which were offering for sale, selling and importing Infringing Products in connection with infringing and counterfeit versions of Plaintiff's federally registered MILWAUKEE Trademarks (the "Infringing Products") to consumers in New York and throughout the United States. Paragoso Decl. ¶10.

Plaintiff's well-pleaded allegations regarding registration patterns, similarities among the e-commerce stores operating under the Seller Aliases and the Infringing Products for sale thereon, and common tactics employed to evade enforcement efforts establish a logical relationship among the Defendants sufficient to support joinder under Fed. R. Civ. P. 20.  If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint accordingly.

## III.    Argument

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Plaintiff's reputation and goodwill associated with the MILWAUKEE Marks. Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* TRO where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition.

3

Fed. R. Civ. P. 65 (b).  The entry of a TRO is appropriate because it would immediately stop the Defendants from benefiting from their wrongful use of the MILWAUKEE Marks and preserve the *status quo* until a hearing can be held.

In the absence of a TRO without notice, the Defendants can and likely will register new e-commerce stores under new aliases and move any assets to offshore bank accounts, outside the jurisdiction of this Court, frustrating any potential recovery. Courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. *See, e.g.*, *Weili Fang and Chee Ray, LLC v. Hangzhou Jiayu Wenhua Chuanmei Youxian Gongsi*, 2021 WL 1249631, *2 (S.D.N.Y. Apr. 5, 2021) ("If Defendants are given notice of Plaintiff's application, they are likely to hide, conceal, transfer or otherwise dispose of their ill-gotten proceeds from their sales of counterfeit and infringing products."); *Lindsey Adelman Studio, LLC v. ZORA Lighting Co., Ltd.*, 2019 WL 7599931, *2 (S.D.N.Y. May 29, 2019) ("Defendants may easily and quickly transfer the registrations of their internet domain name, or modify registration data and content, change hosts, and redirect traffic to other websites, thereby thwarting Plaintiff's ability to obtain meaningful relief.").  As such, Plaintiff respectfully requests that this Court issue the requested *ex parte* TRO.

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq*., 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

Personal jurisdiction exists over Defendants in this Judicial District pursuant to N.Y. C.P.L.R. § 302(a)(1) and N.Y. C.P.L.R. § 302(a)(3), or in the alternative, Fed. R. Civ. P. 4(k) because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in New York and in this Judicial District, and derive substantial revenue from business transactions in New York and in this Judicial District or otherwise avail themselves of the

4

privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process. *American Girl, LLC v. Zembrka*, 2024 U.S. App. LEXIS 23555, at \*7-10 (2d Cir. Sept. 17, 2024); *see also* Fed. R. Civ. P. 4(k)(2).

### A.     Standard for Temporary Restraining Order

A court will issue a temporary restraining order where the requesting party demonstrates the following four factors: (1) it has a substantial likelihood of success on the merits; (2) the moving party will suffer irreparable injury if the order is not granted; (3) that the threatened injury to the plaintiff outweighs the harm the relief would inflict on the non-movant; and (4) entry of the order would serve the public interest. *3M Co. v. Performance Supply, LLC*, 458 F.Supp.3d 181, 191 (S.D.N.Y. 2020).

When a party requests an ex parte temporary restraining order, the "Court must also determine whether '(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damages will result to the movant before the adverse party can be heard in opposition,' and '(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.'" *Cengage Learning, Inc. v. Doe 1,* 2018 WL 2244461, \*1 (S.D.N.Y. Jan. 17, 2018) (quoting Fed. R. Civ. P.65(b)(1)).

### B.     Plaintiff Will Likely Succeed on the Merits.

#### 1.     *Plaintiff Will Likely Succeed on Its Trademark Claim.*

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, uses in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods . . . which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). "The standards governing claims for trademark infringement,

under Section 32 of the Lanham Act, and unfair competition, under Section 43(a), are substantially the same." *S.E. Satisfy v. Bluestar All. LLC*, No. 25-cv-4845 (CM), 2025 LX 511474, at *5 (S.D.N.Y. Dec. 3, 2025) citing *Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, 220 F. Supp. 2d 289, 297 (S.D.N.Y. 2002). "The test looks first to whether the plaintiff's mark is entitled to protection, and second to whether defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods." *Id*. at *5-6.

In this case, the Marks are distinctive and registered with the United States Patent and Trademark Office. Paragoso Decl. at ¶¶ 6-9; Exhibit 1 to Complaint. The registration for the Marks are valid, subsisting, in full force and effect, and is incontestable pursuant to 15 U.S.C. § 1065. The registrations for the Marks constitute *prima facie* evidence of its validity and of Plaintiff's exclusive right to use the Marks pursuant to 15 U.S.C. § 1057(b). Furthermore, Plaintiff has not licensed or authorized Defendants to use any of the Marks, and none of the Defendants are authorized retailers of Plaintiff's products. Paragoso Decl. ¶ 13. Thus, Plaintiff satisfies the first element of its Lanham Act claim.

"Where, as here, one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." " Thus, the Court need only determine the more fundamental question of whether the items at issue here are, in fact, counterfeit and whether Defendants sold those items." *Chanel, Inc. v. Veronique Idea Corp.,* 795 F. Supp. 2d 262, 267 (S.D.N.Y. 2011) (quoting *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir.1987)). Accordingly, the Court can presume a likelihood of confusion from Defendants' use of the Marks.

The result is the same when considered in light of the Second Circuit's eight enumerated factors to determine whether there is a likelihood of confusion, which include: (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their

6

competitiveness with one another; (4) evidence that the senior user may bridge the gap by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market. *Lego A/S v. Zuru Inc.,* No. 24-634-cv, 2025 LX 592276, at *1 (2d Cir. Dec. 10, 2025).

Plaintiff has submitted extensive documentation showing that Defendants are selling Infringing Products that look similar to genuine Plaintiff's products and use infringing and counterfeit marks identical to the Marks. Paragoso Decl. ¶ 11; Exhibit 2 to Complaint. Both Plaintiff and Defendants advertise their products to consumers via the Internet, targeting consumers searching for genuine Plaintiff's products. *See* Paragoso Decl. ¶ 13. Those consumers are diverse with varying degrees of sophistication, and they are likely to have difficulty distinguishing genuine Plaintiff's products from Infringing Products. Indeed, it appears that Defendants are intentionally trying to induce consumers looking for genuine Plaintiff's products to purchase Infringing Products instead. Paragoso Decl. ¶ 13. Evidence of actual consumer confusion is not required to prove that a likelihood of confusion exists. *Reply All Corp. v. Gimlet Media, LLC,* 843 F. App'x 392, 397 (2d Cir. 2021).

Accordingly, Plaintiff is likely to establish a *prima facie* case of trademark infringement, counterfeiting, and false designation of origin.

**C.      There Is No Adequate Remedy at Law, And Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief.**

Because Plaintiff has shown a likelihood of success on the merits, Plaintiff is entitled to a rebuttable presumption of irreparable harm. 15 U.S.C. § 1116(a). Even without the presumption of irreparable harm, however, Plaintiff can easily satisfy this factor. Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill. *Kipling Apparel Corp. v.*

7

*Boading Baigou Xincheng Younuo Trading Co.*, No. 1:18-cv-08333-ALC, 2019 U.S. Dist. LEXIS 234292, at *9 (S.D.N.Y. June 20, 2019). It is well-settled that a trademark owner's loss of goodwill and ability to control its reputation constitutes irreparable harm sufficient to satisfy the preliminary injunction standard. *New York City Triathalon, LLC v. NYC Triathalon Club, Inc.*, 704 F.Supp.2d 305, 325 (S.D.N.Y. 2010); see also 17 U.S.C. §§502, 503 (providing for injunctive relief for copyright infringement; enjoining any use or exploitation by Defendants of their infringing work and that any of Defendants' infringing products be impounded and destroyed).

Defendants' unauthorized use of the MILWAUKEE Marks has caused and continues to cause irreparable harm to Plaintiff through diminished goodwill and brand confidence, damage to Plaintiff's reputation, loss of exclusivity, and loss of future sales. Paragoso Decl. ¶¶ 22-23. The extent of the harm to Plaintiff's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *NYP Holdings v N.Y. Post Publ'g Inc.*, 63 F.Supp.3d 328, 341-42 (S.D.N.Y. 2014).

Plaintiff will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1). Paragoso Decl. ¶ 23.

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity. *Cengage Learning*, 2018 WL 2244461 at *3 ("where Plaintiff seek both equitable and legal relief in relation to specific funds, a court retains its equitable power to freeze assets") (internal quotations and citations omitted); *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992). Additionally, without a restraint of assets, Defendants will have little to no

incentive to participate in these proceedings, as they can simply transfer out their ill-gotten gains, close their Seller Aliases and quickly open new stores selling Infringing Products under different names, thereby continuing their infringing activities and causing ongoing harm to Plaintiff.

### D.      The Balancing of Harms Tips in Plaintiff's Favor, And the Public Interest Is Served by Entry of the Injunction.

As noted above, if the Court is satisfied that Plaintiff has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted, then it must next determine whether the balance of the hardships between the plaintiff and defendants, if an injunction is issued, tips in the plaintiff's favor. *Cengage Learning*, 2018 WL 2244461, at *1. "It would not be a 'hardship' for Defendant to refrain from engaging in unlawful activities related to [the Plaintiff's] brand." *3M Co.,* 458 F.Supp.3d at 197; *WpIX, Inc. v. lvl, Inc.,* 691 F.3d 275, 287 (2nd Cir. 2012) ("an […] infringer cannot complain about the loss of ability to offer its infringing product"). Thus, "[w]hen considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the marks of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the Plaintiffs' trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n*, 929 F. Supp. 473, 478 (D.D.C. 1996); *Estee Lauder, Inc. v. Watsky*, 323 F.Supp. 1064, 1068 (S.D.N.Y. 1970) ("To the plaintiff its name is at stake, and continued injury to its reputation and goodwill would be a far more serious blow to it than the curtailment of the sale by the defendants would be to them.").

As Plaintiff has demonstrated, Defendants have been profiting from the sale of Infringing Products. Thus, the balance of equities tips decisively in Plaintiff's favor.

## IV.    The Equitable Relief Sought Is Appropriate

The Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark …." 15 U.S.C. § 1116(a).

### A.    An *Ex Parte* Temporary Restraining Order Is Necessary to Combat Unique Circumstances of Offshore Infringement.

The Court may grant an *ex parte* seizure order if providing notice to the Defendants would render fruitless the further prosecution of the action. *In re Vuitton et Fils, S.A.*, 606 F.2d 1 (2d Cir.1979) (holding that *ex parte* temporary restraining orders are indispensable to the commencement of an action when they are the sole method of preserving a state of affairs in which the court can provide effective final relief).

An *ex parte* TRO is necessary and justified in this case given the unique circumstances of offshore e-commerce counterfeiting. Courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. *See, e.g., Weili Fang and Chee Ray, LLC v. Hangzhou Jiayu Wenhua Chuanmei Youxian Gongsi*, 2021 WL 1249631, *2 (S.D.N.Y. Apr. 5, 2021) ("If Defendants are given notice of Plaintiff's application, they are likely to hide, conceal, transfer or otherwise dispose of their ill-gotten proceeds from their sales of counterfeit and infringing products."); *Lindsey Adelman Studio, LLC v. ZORA Lighting Co., Ltd.*, 2019 WL 7599931, *2 (S.D.N.Y. May 29, 2019) ("Defendants may easily and quickly transfer the registrations of their internet domain name, or modify registration data and content, change hosts, and redirect traffic to other websites, thereby thwarting Plaintiff's ability to obtain

meaningful relief."). As such, Plaintiff respectfully requests that this Court issue the requested ex parte temporary restraining order.

Here, each Defendant is engaged in the inherently deceptive act of intellectual property infringement from outside the U.S. *Gucci Am., Inc. v. Weixing Li,* 768 F.3d 122, 132-33 (2d Cir. 2014) (confirming authority to issue a TRO and preliminary injunction freezing assets of offshore defendants selling counterfeit goods online); *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007) (affirming TRO and preliminary injunction freezing assets of defendants selling counterfeit goods); *Reebok Int'l Ltd. v. Marnatech Enterprises, Inc.*, 737 F. Supp. 1521, 1527 (S.D. Cal. 1990) ("Due to the international aspect of the defendants' business, the Court is concerned that unless the assets are frozen, defendants may hide their allegedly ill-gotten funds."), aff'd, 970 F.2d 552 (9th Cir. 1992).

Plaintiff has submitted evidence showing that Defendants are selling Infringing Products and operate from China or other foreign jurisdictions. *See* Paragoso Decl. ¶ 11; Complaint, Exhibit 2. Defendants "take advantage of a set of circumstances – the anonymity and mass reach afforded by the internet and the cover afforded by international borders – to violate [Plaintiff's] trademarks with impunity." *Bose Corp. v. P'ships, et al.*, 334 F.R.D. 511, 516 (N.D. Ill. 2020). Specifically, Plaintiff has established that Defendants operate offshore in foreign jurisdictions. Paragoso Decl. ¶ 11. Defendants are also likely aware that it would be "difficult if not impossible to enforce U.S. judgments in China." *Cisco Sys.*, 2020 U.S. Dist. LEXIS 158008 at *25; *See* Declaration of Shengmao Mu (the "Mu Decl.") at ¶ 7.

**B.    A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized Conduct Is Appropriate.**

Plaintiff requests a temporary injunction requiring the Defendants to immediately cease all unauthorized use of the MILWAUKEE Marks, or substantially similar or confusingly similar

intellectual property, on or in connection with all e-commerce stores operating under the Seller Aliases. Courts in this district have regularly authorized injunctive relief in similar cases involving counterfeiting. *See, e.g., Fox Shiver, LLC v. Individuals*, No. 23-CV-1898, 2023 U.S. Dist. LEXIS 118387 (S.D.N.Y. Apr. 25, 2023).

### C.        Preventing The Fraudulent Transfer Of Assets Is Appropriate.

Plaintiff requests an *ex parte* restraint of Defendants' assets so that Plaintiff's right to an equitable accounting of Defendants' profits from sales of Infringing Products is not impaired. Issuing an *ex parte* restraint will ensure Defendants' compliance. Defendants can easily remove all evidence of their counterfeit goods from their virtual storefronts and transfer any ill-gotten funds into foreign bank accounts, where they are beyond this Court's reach. *Pandaloon LLC v. Hefei Longnew Pet Prods. Co., Ltd.*, 2025 LX 506956, at *9 (S.D.N.Y. Dec. 13, 2025). If an asset restraint is not granted, Defendants will likely disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Based on its investigation, Plaintiff has reason to believe that Defendants in this case may hold substantial assets in offshore accounts, as suggested by their ongoing commercial activities and sales volumes. Without an asset restraint, Defendants could potentially hide or dispose of assets, which would render an accounting by Plaintiff meaningless and frustrate the Court's ability to provide effective relief.

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity. *Cengage Learning*, 2018 WL 2244461 at *3 ("where Plaintiff seeks both equitable and legal relief in relation to specific funds, a court retains its equitable power to freeze assets") (internal quotations and citations omitted); *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559

12

(9th Cir. 1992). In addition, Plaintiff has shown a strong likelihood of succeeding on the merits of its trademark infringement and counterfeiting claim, so according to the Lanham Act 15 U.S.C. § 1117(a)(1), Plaintiff is entitled, "subject to the principles of equity, to recover ... defendant's profits." Plaintiff's Complaint seeks, among other reliefs, that Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts. *See Klipsch Grp., Inc. v. Big Box Store Ltd.*, 2012 WL 4901407, *2 (S.D.N.Y. Oct. 11, 2012) ("Courts in this district have exercised their equitable authority powers in Lanham Act cases to restrain assets to preserve the return of profits derived from the sale of counterfeit goods and to insure counterfeiting [p]laintiffs the accounting to which they are entitled.") (collecting cases). Therefore, this Court has the inherent equitable authority to grant Plaintiff's request for a prejudgment asset freeze to preserve the relief sought by Plaintiff.

The Southern District of New York previously entered an asset restraining order in a trademark infringement case brought by Gucci America, Inc. against the owners and operators of a Chinese website engaged in the sale of counterfeit handbags. *Gucci America, Inc. v. Weixing Li*, 2011 WL 6156936, *3 (S.D.N.Y. Aug. 23, 2011), aff'd in relevant part and vacated on other grounds, 768 F.3d 122 (2nd Cir. 2014). The Court, *citing Grupo Mexicano de Desarollo, S.A. v. Alliance Bond Fund*, 527 U.S. 308 (1999), recognized that it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. Id. (citing *Grupo Mexicano,* 527 U.S. at 324-26). Because Gucci sought an accounting of the store owner's profits, an equitable remedy, the Court found that it had the authority to freeze the store owner's assets. *Id*. at *4; *see also Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992); *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988 (7th Cir. 2002) ("since the assets in question ... were the profits of the [defendants] made by unlawfully

13

stealing [the plaintiff's] services, the freeze was appropriate and may remain in place pending final disposition of this case."); accord 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 30:40 (4th ed. 2013).

Plaintiff has demonstrated a strong likelihood of success on the merits, substantial and ongoing irreparable harm suffered as a direct result of Defendants' infringing activities, and compelling evidence that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts, as demonstrated by their pattern of evasive behavior. Accordingly, an immediate asset restraint is necessary and proper.

### D.    Plaintiff Is Entitled to Expedited Discovery.

"A party may seek expedited discovery before the Federal Rules of Civil Procedure Rule 26 (f) conference when authorized by a court order." *Next Phase Distrib., Inc. v. John Does 1-27*, 284 F.R.D. 165, 171 (S.D.N.Y. 2012) (citing Fed. R. Civ. P. 26(d)(1)). "Courts in this District use a flexible standard of reasonableness and good cause when considering whether to grant an order." *Cengage Learning*, 2018 WL 2244461 at *4 (citing *Next Phase Distrib.*, 284 F.R.D. at 171). Courts have broad power over discovery and may permit discovery to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2).

Plaintiff requests expedited discovery to identify the true names, contact information, and financial accounts Defendants use for their operations. The expedited discovery requested is narrowly tailored and limited to: (1) information necessary to identify Defendants and serve them with process; (2) financial account information necessary to effectuate the requested asset restraint; and (3) information regarding the scope of Defendants' infringing activities to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained and that Plaintiff can obtain meaningful relief through

14

an accounting of profits and prevention of further unauthorized transfers. Plaintiff's asset restraint may have little meaningful effect without corresponding expedited discovery.

### E. Service of Process by E-mail and/or Electronic Publication Is Warranted in this Case.

Pursuant to Federal Rule of Civil Procedure 4(f)(3), Plaintiff requests authorization to serve process by e-mail and by electronically publishing a link to the Complaint, the Temporary Restraining Order, and other relevant documents on a website to which the Defendant Seller Aliases will be transferred (the "Link"). Plaintiff submits that providing notice via electronic publication and e-mail, along with any notice that Defendants receive from the online marketplace providers and payment processors, is reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections. More specifically, Federal Rule of Civil Procedure 4(f)(3) allows this Court to authorize service of process by any means not prohibited by international agreement as the Court directs. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). The Ninth Circuit in Rio Properties held, "without hesitation," that e-mail service of an online business defendant "was constitutionally acceptable." *Id.* at 1017. The Court reached this conclusion, in part, because the defendant conducted its business over the Internet, used e-mail regularly in its business, and encouraged parties to contact it via e-mail. *Id.*

1. The Hague Convention Does Not Apply Because the China-Based Defendants' Addresses are Unknown

The United States and the People's Republic of China are both signatories to the Hague Service Convention. Declaration of Shengmao Mu (hereinafter, "Mu"). Article 1 of the Hague Service Convention states that the Convention does not apply if the address of the person to be served is unknown. *See* HAGUE CONVENTION ON THE SERVICE ABROAD OF JUDICIAL AND EXTRAJUDICIAL DOCUMENTS IN CIVIL OR COMMERCIAL MATTERS, Art. 1; *see also Kelly Toys*

15

*Holdings, LLC. v. Top Dep't Store,* No. 22 CIV. 558 (PAE), 2022 WL 3701216, at *9 (S.D.N.Y. Aug. 26, 2022); *see also Chanel, Inc. v. Zhixian*, No. 10-CV-60585, 2010 WL 1740695, at *3 (S.D. Fla. April 29, 2010); *BP Products North America, Inc. v. Dagra*, 236 F.R.D. 270, 271 (E.D. Va. 2006); *Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 562 (E.D. Tenn. 2004). Consistent with Article 1, when a plaintiff has attempted to diligently locate foreign defendants, but has been unable to do so, the requirements of the Hague Convention do not apply. *See Sec. & Exch. Comm'n v. Lahr*, 22-2497, 2024 WL 3518309, at *4 (3d Cir. July 24, 2024).

Plaintiff attempted to locate the Defendants based upon the information provided on Defendants' websites. *See* Mu Decl. ¶ 12. As part of that process, Plaintiff utilized both Google Maps and Baidu Maps to attempt to locate and verify the addresses. Plaintiff's investigator found that few, if any, Defendants provided a complete and accurate physical address on the e-commerce store. *See id*. Moreover, the complete addresses that were provided were not located in an area where any businesses potentially linked to the Defendants could be located. *See id*. None of the addresses provided by Defendants returned a result consistent with a Defendant operating a business at that address. *See id*.

## V.      A Bond Should Secure the Injunctive Relief

The posting of security upon issuance of a temporary restraining order or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp*., 174 F.3d 411, 421 (4th Cir. 1999); Fed. R. Civ. P. 65(c). Because of the strong and unequivocal nature of Plaintiff's evidence of counterfeiting, infringement, and unfair competition, Plaintiff respectfully requests that this Court require Plaintiff to post a bond of no more than One Thousand Five Hundred U.S. Dollars ($1,500.00). Plaintiff submits that a bond in such amount is fair and reasonable under the circumstances. In fact, such a bond amount is consistent with the bond amounts required by courts

in similar cases. *See, e.g.,* Cengage Learning, 2018 WL 2244461, at *6 ($2,500 bond); Weili Fang, 2021 WL 1249631, at *6 ($1,000 bond)

## VI.    Conclusion

In view of the foregoing, the clear evidence of ongoing infringement, and consistent with well-established precedent in similar cases, Plaintiff respectfully requests that the Court enter a Temporary Restraining Order, including a temporary injunction, a temporary asset restraint, expedited discovery, and an order to show cause, in the form submitted herewith.

Dated: March 26, 2026                                  Respectfully submitted,

*/s/ Shengmao Mu*
Shengmao Mu
NY No. 5707021
**WHITEWOOD LAW PLLC**
57 West 57th Street, 3rd and 4th Floors
New York, NY, 10019
Telephone: (917) 858-8018
Email: smu@whitewoodlaw.com

*Counsel for Plaintiff*

17